IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:10-CV-108-WKW [WO] ) |
| EAGLE AVIATION ACADEMY, LLC, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff National Union Fire Insurance Co. ("National Union") seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201-02, establishing its obligations to its insured, Eagle Aviation Academy, LLC ("Eagle" or "Defendant"). (Doc. # 1.) After Eagle answered (Doc. # 8) and counterclaimed (Doc. # 11), National Union answered the counterclaim (Doc. # 12), and then filed a Motion for Summary Judgment (Doc. # 19), which has been briefed and is ready for adjudication. For the reasons that follow, National Union's Motion for Summary Judgment is due to be granted.

**I. JURISDICTION AND VENUE**

Subject matter jurisdiction in this case is exercised pursuant to 28 U.S.C. §§ 2201-02 and 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and there are allegations sufficient to support both.

**II. STANDARD OF REVIEW**

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (quoting Fed. R. Civ. P. 56(c)). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. Fed. R. Civ. P. 56(e)(2); *Celotex Corp.*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

### III.  FACTUAL BACKGROUND

The material facts of this case are undisputed. Eagle is contracted by the state of Alabama and the Alabama Power Company to conduct visual inspections of all power lines in the state of Alabama four times per year. (Mayer Dep. 6 (Doc. # 24, Ex. A).)

National Union issued an insurance policy to Eagle, No: AV 3789892-02, extending coverage to all of Eagle's aircraft for certain types of liability associated with the operation of those aircraft.[1]  (Policy (Doc. # 19, Ex. 10).)  Under a subheading titled "Automatic Insurance for Newly Acquired Aircraft," the policy stated that coverage would be automatically extended to newly acquired aircraft, retrospective to the date ownership was acquired, if Eagle reported such acquisition of ownership within thirty days of purchase.[2] (Policy at 4.)

On April 6, 2009, Eagle entered into a conditional sales agreement with the Wiregrass Chapter of the Army Aviation Heritage Foundation[3] ("Wiregrass/FAAO") to exchange a Hughes OH-6 ("Hughes") helicopter for a Bell UH-1 Huey ("Huey") helicopter.  (The Agreement (Doc. # 19, Ex. 1).)  The Agreement stated that it was "pending review of all records, determination of the airworthiness on the UH-1 Huey and the ability to obtain a Federal Aviation Administration ("FAA") Airworthiness Certificate in Restricted Category." ("The Agreement").  Eagle took possession of the Huey helicopter at some point in April

---

[1] The Policy extended coverage for any physical damage loss to any covered aircraft, including damage sustained while the aircraft is not in flight or in motion.  (Policy at 2, 3.)

[2] The relevant section of the provision reads:

> If the **Named Insured** acquires ownership of an **Aircraft** in addition to or replacement to the Aircraft described in Item 4 of the Declarations and within thirty (30) days thereafter reports such acquisition to the **Aviation Managers**, then the insurance afforded by this policy shall apply to such additional or replacement **Aircraft** as of the time of such acquisition. . . .

[3] At some point between April and December 2009, Wiregrass became disassociated from the Army Aviation Heritage Foundation, and now is called the Friends of Army Aviation Ozark Foundation ("FAAO").  (Mayer Dep. 14.)

2009. (Def's Interrog. Resp. (Doc. # 19, Ex. 2)).) The Hughes helicopter remained in Eagle's possession and in Eagle's name.[4]

On August 10, 2009, an FAA Aircraft Bill of Sale transferring title to the Huey was executed by Eagle as the Purchaser and by Wiregrass/FAAO as the Seller. (Bill of Sale (Doc. # 19, Ex. 3).) The Bill of Sale stated that Wiregrass/FAAO "DOES THIS 10th DAY OF AUG. 2009 HEREBY SELL, GRANT, TRANSFER AND DELIVER ALL RIGHTS, TITLE, AND INTERESTS IN AND TO SUCH AIRCRAFT UNTO [Eagle]." Also on August 10, 2009, Eagle applied to the FAA for registration of the Huey. (Aircraft Registration Application (Doc. # 19, Ex. 4).) According to Colonel Mayer, the Bill of Sale was executed only for the purpose of obtaining an FAA Airworthiness Certificate. (Mayer Dep. 50-51.)

Eagle received an Experimental Airworthiness Certificate from the FAA on October 7, 2009.[5] (Airworthiness Certificate (Doc. # 19, Ex. 5).) The experimental certificate required Eagle to provide to the FAA a list of exhibition events, which Eagle sent by letter dated October 7, 2009. (Program Letter (Doc. # 19, Ex. 6).) On October 27, 2009, the FAA responded to the letter, requesting an "[identification of] the registered aircraft owner." (FAA Request (Doc. # 19, Ex. 7).) Eagle replied to the FAA's request on November 15,

---

[4] Colonel Frank Mayer, Eagle's Manager, testified that the Hughes OH-6 remained in Eagle's hangar, but that Wiregrass/FAAO made use of the Hughes whenever it pleased for their own financial purposes, and Eagle only charged Wiregrass/FAAO for gas and consumables. (Mayer Dep. 32-34.)

[5] Although the exchange agreement indicates that a Restricted Airworthiness Certificate was contemplated, the FAA counseled Colonel Mayer to instead pursue an Experimental Airworthiness Certificate. (Mayer Dep. 26-27.)

2009, stating that "The Bell UH-1 Huey helicopter is owned by Eagle Aviation Academy, LLC." (Eagle Resp. to FAA Request (Doc. # 19, Ex. 8).) On November 19, 2009, Eagle requested a change of the registration number on the Huey, stating that the "helicopter is registered to Eagle Aviation Academy, LLC." (Change of Registration Number Request (Doc. # 19, Ex. 9).)

On December 16, 2009, Colonel Mayer met with Wiregrass/FAAO (at this point FAAO). Eagle agreed at this meeting "that all conditions in the agreement of April 6, 2009, had been met and that Eagle was prepared to complete the agreement and transfer the [Hughes]." (Doc. # 23, at 2; Mayer Dep. 33-34.) According to Colonel Mayer, the transfer of the title to the Hughes was to take place after Christmas. (Mayer Dep. 36.)

On December 19, 2009, Eagle attempted to notify its insurance agent by facsimile of the acquisition of the Huey. The fax transmission was unsuccessful. (Mayer Dep. 38-39.)

On December 23, 2009, Eagle attempted to perform a hover check on the Huey. The engine failed, and the helicopter experienced a hard landing, causing the damage that was the basis for Eagle's insurance claim. On the same date, Eagle notified National Union of the hard landing and of the fact that Eagle had acquired the Huey. (Doc. # 23.)

## IV. DISCUSSION

On undisputed facts, the court is tasked with interpreting the applicability of a contract provision: when did Eagle "acquire ownership" of the Huey helicopter for the purpose of triggering the automatic coverage provision of its insurance policy? It is undisputed that Eagle did not provide National Union with notice of the acquisition of the Huey until

December 23, 2009, immediately after the incident giving rise to the claim. Therefore, in order for the Huey to have been covered under Eagle's policy, Eagle must have acquired the helicopter on or after November 23, 2009. If, as National Union alleges, Eagle "acquire[d] ownership" on August 10, 2009, when it possessed the Huey helicopter and executed the FAA Bill of Sale, the Huey was not covered under the policy on December 23, 2009 because Eagle did not report the acquisition within thirty days, as required under the Policy. If, on the other hand, Eagle "acquire[d] ownership" on December 16, 2009, when it met with Wiregrass/FAAO and agreed that the conditions in the conditional sales contract were met, coverage for the helicopter would have been retroactive to December 16, 2009, since Eagle did, in fact, notify National Union within thirty days of acquisition of ownership. Under such a scenario, the policy would have covered the Huey on December 23, 2009, the date of the crash.

The first determination is whether New York or Alabama substantive law governs this inquiry. Finding that no conflict exists with respect to this issue, the court defers to the parties, who rely upon Alabama law.

The court then determines that under Alabama law, Eagle acquired ownership of the Huey on August 10, 2009. Consequently, National Union owes Eagle no obligations for the Huey under the Policy.

**A.     Choice of Law**

The parties make no specific arguments as to choice of law. National Union cites Alabama law in its briefs, and Eagle cites no law in the "Argument" section of its brief.

7

However, the issue must be addressed.  In diversity cases, the choice-of-law rules of the forum state determine which state's substantive law applies.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *see Am. Family Life Ins. Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989).

Alabama follows the approach to choice of law issues embodied in the First Restatement of Conflicts of Laws, employing the traditional rules of *lex loci contractus* and *lex loci delecti*.  *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009).  Under the principles of *lex loci contractus*, a contract is governed by the law of the jurisdiction within which the contract is made.  *Id*. (citing *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502 (Ala. 1991)).  In the context of insurance contracts, Alabama law holds that "the law of the state where the insurance policy was delivered to the insured controls the interpretation of the insurance contract."  *Travelers Indem. Co. v. Gen. Star Indem. Co.*, 157 F. Supp. 2d 1273, 1285 (S.D. Ala. 2001); *see also Ailey v. Nationwide Mut. Ins. Co.*, 570 So. 2d 598 (Ala. 1990) (applying law of the state where the insurance policy was "issued"); *Cherokee Ins. Co. v. Sanches*, 975 So. 2d 287, 293 (Ala. 2007) (applying law of state where "the policy was issued and delivered").

However, if there is no conflict between the competing bodies of law, the court need not decide which state's laws govern.  *Lemuel v. Admiral Ins. Co.*, 414 F. Supp. 2d 1037, 1049-50 (M.D. Ala. 2006); *see also Scott v. Prudential Sec., Inc.,* 141 F.3d 1007, 1012 (11th Cir. 1998) ("We . . . need not resolve this choice of law problem because the relevant law in

both states is essentially in harmony."); *United States v. McCleskey Mills*, 409 F.2d 1216, 1217 (5th Cir. 1969) (where there is no conflict, no choice of law is necessary).[6]

With respect to titled personal property, there is generally no conflict between the laws of Alabama and New York. The particular question presented in this case – to what extent and when does possession of an aircraft, transfer of title to that aircraft, and registration of that aircraft with the FAA establish ownership of that aircraft – is not answered in the case law of either state. The court will rely on general principles. *See, e.g., Dobson v. Gioia*, 834 N.Y.S.2d 356, 359 (N.Y. App. Div. 2007) ("While a certificate of title [to a boat] is considered to be prima facie evidence of ownership, this Court has previously held that it is not conclusive on that issue.") (collecting cases); *Carolina Cas. Ins. Co. v. Williams*, 945 So. 2d 1030, 1034 (Ala. 2006) ("Under Alabama law, the manner in which a vehicle is titled is prima facie evidence of ownership.").[7] Because no actual conflict exists between the two states' laws, the court will apply the substantive law of the Alabama, the forum state, as have the parties.

## B. Indicia of Property Ownership – General Principles

Possession of personal property has long been regarded as *prima facie* evidence of title. *See Hobbs v. Bibb*, 2 Stew. 54 (Ala. 1829) ("[The person] being in possession, the law

---

[6] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *See* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

[7] The court will be drawing heavily from decisions construing insurance policy provisions covering automobiles, as automobile insurance contracts are much more prevalent and frequently litigated.

9

would presume that he was the owner, but that this presumption would give way to proof that he was not."); *see also Vaughan v. Borland*, 175 So. 367, 368 (Ala. 1937) ("[p]ossession of property raises a rebuttable presumption of ownership.").

Title documents are also *prima facie* evidence of ownership of property. *Williams*, 945 So. 2d at 1034 (citing Ala. Code § 32-8-39(d) (1975) ("A certificate of title issued by the department [of revenue] is prima facie evidence of the facts appearing on it.")).

Because Eagle possessed, exercised dominion over, and had title to the Huey on August 10, 2009, there is a plural presumption that Eagle owned the helicopter as of that date. If Eagle is to rebut this presumption, as explained below, it may not do so by calling into question the enforceability of its contract with Wiregrass/FAAO. Rather, it must show that it did not "acquire ownership," as defined in its insurance policy until, December 16, 2009.

**C.     Eagle "Acquired Ownership" of UH-1 Huey Helicopter on August 10, 2009**

*1.     The Conditions Precedent of Eagle's Contract with Wiregrass/FAAO*

Eagle's position is that it did not "acquire ownership" of the Huey until the December 16, 2009 meeting between Eagle and Wiregrass/FAAO. Eagle's assertion relies substantially on the conditional nature of its contract with Wiregrass/FAAO. Eagle maintains that until December 16, 2009, at least one of the three conditions from the April 6, 2009 agreement had not been fulfilled. Specifically, Colonel Mayer testified that he was not satisfied that the Huey was airworthy until December 16, 2009. (Mayer Dep. 36, 51.) According to Eagle, because at least one condition precedent was not satisfied until December 16, 2009, Eagle

did not "acquire ownership" within the meaning of its insurance contract with National Union until December 16, 2009.

Eagle's position conflates its contractual rights and obligations with respect to the Wiregrass/FAAO conditional sales agreement with its rights and obligations with respect to its National Union insurance policy, an entirely different contract. Although Eagle is correct to point out that a condition precedent must be satisfied before the conditioning party incurs obligations under a contract, *see Warrior Wholesale Homes v. Robertson*, 20 So. 3d 798 (Ala. Civ. App. 2009) (if a fact is a condition precedent to a defendant's duty of performance, it is a necessary part of a plaintiff's cause of action), the conditional sales contract is not the subject of this dispute and the court declines to opine on its enforceability. The issues of when the conditions precedent in the contract were satisfied and when Eagle performed its obligation – transferring title to the Hughes aircraft – are distinct from when Eagle acquired title to the Huey aircraft. The pertinent inquiry here is when Eagle "acquired ownership" of the Huey so as to trigger the thirty-day notice period for automatic coverage of the newly acquired helicopter.

*2.    Acquisition of Ownership*

In *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691-92 (Ala. 2001), the Supreme Court of Alabama held:

> If an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction. The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous. While ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted

>reasoning. Where the parties disagree on whether the language in an insurance contract is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it.

*Id.* at 691-92; *see also Am. & Foreign Ins. Co. v. Tee Jays Mfg. Co.*, 699 So. 2d 1226, 1228 (Ala. 1997).

The parties disagree on the meaning of "acquires ownership" under the policy provision for automatic coverage of newly acquired aircraft, see *supra* note 1. Eagle's argument is that ownership was not acquired until the acquisition became legally binding between the purchaser and the seller. In other words, Eagle's conditional sales agreement to exchange the Hughes for the Huey arguably was not enforceable by Wiregrass/FAAO against Eagle until December 16, 2009, when Eagle alleges that all of the conditions precedent were satisfied. Eagle argues that it cannot be found to have acquired ownership of the Huey until that date. National Union's counters that Eagle's possession of the Huey, representations of ownership by Eagle to the FAA, and most importantly, an FAA Bill of Sale granting title to Eagle, are sufficient evidence that Eagle acquired ownership of the Huey on August 10, 2009, for purposes of triggering the policy's automatic coverage provision.

"Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Twin City Fire Ins. Co.*, 817 So. 2d at 691-92. In the context of simply providing notice to the insurer in order to receive the benefit of automatic coverage for a limited period of time,

the court concludes that the parties intended, and that a person of ordinary intelligence would interpret the phrase "acquires ownership" with, a meaning that is more in accord with National Union's interpretation of the phrase. *Id.*; *see also Tee Jays Mfg. Co.*, 699 So. 2d at 1228-29. Eagle's exclusive possession of and dominion over the Huey from April 2009, and the transfer of title to Eagle with an FAA Bill of Sale on August 10, 2009, establish that Eagle "acquired ownership" of the Huey on August 10, 2009.

In *Aetna Casualty & Surety Co. v. Chapman*, the Alabama Supreme Court, interpreting a similar provision in an automobile insurance policy, stated that the phrase "'acquires ownership' clearly means such ownership as the ordinary man ascribes to his own, the property right which he holds as owner; the right of user, and interest in its protection which goes with a sense of ownership." 200 So. 425, 427 (Ala. 1941); *see also Ga. Mut. Ins. Co. v. Criterion Ins. Co.*, 206 S.E.2d 88, 90-91 (Ga. Ct. App. 1974) (fact that insured did not receive certificate of title at time of delivery did not preclude finding that insured "acquired ownership" of vehicle under policy); *Everly v. Creech*, 294 P. 2d 109, 113 (Cal. Dist. Ct. App. 1956) (exercise of dominion over automobile is equivalent to a finding of ownership within the meaning of automatic coverage provision for newly acquired vehicle); *Sheffield v. Aetna Cas. & Sur. Co.*, 293 N.Y.S.2d 213, 217-18 (N.Y. Sup. 1968) (evidence of plaintiff's dominion over automobile, including his own conduct and attitude treating the automobile as his, was sufficient to establish that he "acquired ownership" under policy). Eagle's conduct treating the Huey exclusively as its own, specifically its own statements to

the FAA claiming ownership, scuttles its position that it did not ascribe to itself ownership of the Huey until December 16, 2009.

Title documents also present strong evidence of ownership of property.[8]  Alabama, along with other jurisdictions, does not hold that title documents are conclusive evidence of ownership.[9]  Nevertheless, Alabama decisions clearly show that title documents give rise to a strong presumption of ownership.  In *Hartford Insurance Group v. State Farm Mut. Auto. Ins. Co.*, the Alabama Supreme Court looked almost exclusively to a bill of sale of an automobile to determine whether the insured or her daughter "acquired ownership" of that replacement automobile for the purpose of coverage under the insured's automatic insurance clause contained in a policy covering the insured's previous automobile.  372 So. 2d 1303

---

[8] Indeed, in several jurisdictions, title to an automobile has been held to be conclusive evidence of ownership. *See, e.g., Am. Nat'l Gen. Ins. Co. v. Solum*, 641 N.W.2d 891, 900 (Minn. 2002) ("compliance with transfer provisions of [statute] established a conclusive presumption of ownership in . . . the individual named on the vehicle's certificate of title."); *Kinkenon v. Hue*, 301 N.W.2d 77, 79-80 (Neb. 1981) ("A certificate of title to a motor vehicle is generally conclusive evidence in this state of the ownership of the vehicle.") (internal quotation omitted); *Reciprocal Exch. v. Noland*, 542 F.2d 462, 465 (8th Cir. 1976) (applying Arkansas law) (finding that acquisition of ownership of inoperable Chevrolet Camaro, from which time the 30-day grace period was to be computed under the policy, occurred on the date when the insured obtained title to and registered the Camaro); *Allstate Ins. Co. v. Stevens*, 445 F.2d 845 (9th Cir. 1971) (applying Hawaii law) (for the purpose of automatic insurance coverage, the time for giving notice of acquisition of an additional vehicle is to be computed from the date legal title is acquired); *Trippel v. Dairyland Mut. Ins. Co.*, 467 P.2d 862 (Wash. App. 1970) (title to vehicle, as opposed to payment of purchase price, is determinative of vehicle's ownership for purpose of triggering automatic insurance clause extending coverage to newly acquired vehicle).

[9] *See, e.g., Allerton v. Broussard*, - - So. 3d - -, 2010 WL 3156041 at *6 (La. App. 5 Cir. 8/10/10) ("[T]he certificate of title is not conclusive proof of ownership [of an automobile], and proof showing different ownership is admissible."); *Lackey v. Lackey*, 18 So. 3d 393 (Ala. Civ. App. 2009) ("[W]e note that a certificate of title is not conclusive evidence of ownership.") (internal quotation omitted); *Brackin v. Brackin*, 894 N.E.2d 206, 212 (Ind. App. 2008) ("Certificate of title is not itself proof of ownership or legal title to the vehicle.  A person may have legal title in a vehicle even though he does not possess a certificate of title.") (internal quotation omitted); *Dobson v. Gioia*, 834 N.Y.S.2d at 359; *Vibbert v. PAR, Inc.*, 224 S.W.3d 317, 321 (Tex. App. 2006) ("The name on the certificate of title [of a vehicle] is not conclusive of ownership.").

(Ala. 1979). Eagle has presented insufficient evidence to overcome this presumption.

Eagle cites no opinion, and the court is aware of none, where a court has concluded that an insured, despite having both dominion over and title to property, nevertheless did not "acquire ownership" of the property under its insurance policy. Furthermore, in cases where courts have found that title documents were not determinative of ownership, the facts have generally involved a buyer in possession who is trying to claim ownership without a completed transfer of title. *See, e.g., Liberty Mut. Ins. Co v. Am. Auto. Ins. Co.*, 154 A.2d 826, 827-28 (Md. 1959)*; Musso v. Am. Lumbermen's Mut. Cas. Co.*, 178 N.Y.S.2d 377 (N.Y. Sup. Ct. 1958). This case presents a much different situation. Eagle had possession of, dominion over, and title to the Huey, and yet it argues that it did not acquire ownership as contemplated in the provisions of its insurance policy.

"Coverage should not turn on such hard-to-pin-down matters . . . . There are questions that a simple and easily measurable standard answers best, and 'ownership' for auto insurance purposes is one of them." *Pearson v. Selected Risks Ins. Co.*, 381 A.2d 91, 92 (N.J. Super. Ct. Law Div. 1977) (collecting cases). Determining ownership on a difficult to answer legal question, such as when an underlying conditional sales contract becomes enforceable, is precisely one of those hard-to-pin-down matters to be avoided. Easily ascertainable facts, such as inquiring into who holds title to property and who exercises dominion over that property, resolve the issue. The inquiry is directed at determining the identity of the beneficial and legal owner. In this case, Eagle was both the beneficial and legal owner of the Huey on August 10, 2009.

15

## V.  CONCLUSION

The undisputed facts establish that Eagle, for the purposes of its insurance policy with National Union, acquired ownership of the Huey helicopter on August 10, 2009, but did not provide notice to National Union that it had acquired ownership of the Huey until December 23, 2009.  Because the policy obligated Eagle to give National Union notice within thirty days of its acquisition of the newly acquired Huey helicopter in order to trigger coverage, there is no coverage for the physical damage to the Huey occurring on December 23, 2009.

Accordingly, it is ORDERED that National Union's Motion for Summary Judgment is GRANTED.  An appropriate judgment will be entered.

DONE this 23rd day of November, 2010.

>           /s/ W.  Keith Watkins
> UNITED STATES DISTRICT JUDGE